**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL. NO. 1:05CV349**


| | |
|---|---|
| **EDWARD WAHLER and KATHY WAHLER,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **Vs.** ) | **O R D E R** |
| ) | |
| **COUNTRYWIDE HOME LOANS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |


**THIS MATTER** came on for hearing before the Court on April 27,

2006, at which time the attorney for the Plaintiffs, C. Gary Triggs, appeared

to respond to an Order to Show Cause issued on April 7, 2006.


## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On October 26, 2001, Edward Wahler borrowed $328,000 from Full

Spectrum Lending, Inc., a division of Countrywide Home Loans, Inc.

(Countrywide), a mortgage lender.[1]  On that same date, Wahler signed a promissory note obligating him to make monthly payments on the loan. The note was secured by a Deed of Trust which was signed by Edward Wahler and his wife, Kathy Wahler.  The Wahlers defaulted in making their monthly payments due under the note in the fall of 2003.

On February 20, 2004, a foreclosure action was commenced against the Deed of Trust in state court.  **Exhibit E, In re Foreclosure of Real Property under Deed of Trust from Edward W. Wahler and Kathy R. Wahler, Case No. 04SP172,** *attached to* **Defendant's Response to Plaintiffs' Motion for TRO, filed March 9, 2006.**  On August 12, 2004, the state court clerk entered an order allowing a foreclosure sale of the property.  **Exhibit F, Order entered in Case No. 04SP172,** *attached to* **Defendant's Response.**  On August 18, 2004, the Wahlers appealed that order of foreclosure but they subsequently abandoned the appeal.  **Exhibit G,** *attached to* **Defendant's Response.**

---

[1]Although Full Spectrum was the direct lender in this transaction, Countrywide actually funded the loan; after closing, the note was assigned to Countrywide.  Thereafter, the note was sold to the Bank of New York although Countrywide continued to service the loan.

Instead of perfecting their appeal in state court, on September 7, 2004, the Wahlers filed a Notice of Removal of the state foreclosure proceeding to this Court. **Exhibit H, Notice of Removal, filed September 7, 2004,** *attached to* **Defendant's Response.** On November 15, 2004, the undersigned remanded the state foreclosure action to state court. **See, Order of Remand, filed November 15, 2004,** *Bank of New York v. Wahler*, **Civil Case No. 1:04cv185.** In so doing, the undersigned specifically noted that the case was "a foreclosure proceeding [which] may not be removed to federal court.]" *Id.*

On October 28, 2005, the Wahlers brought a separate action against Countrywide in state court alleging violations of the Truth in Lending Act, state law claims, and seeking to enjoin the foreclosure. *Wahler v. Countrywide Homes Loans, Inc.*, **Case No. 05CVS4772.** Meanwhile, the foreclosure action proceeded in due course and the foreclosure sale occurred as to the property on November 16, 2005, when it was sold to the highest bidder, the Bank of New York. **Exhibit I, Report of Foreclosure Sale, Case No. 04SP172,** *attached to* **Defendant's Response.** No upset bid was filed and the foreclosure sale became final. **Exhibit J, Final Report and Account of Foreclosure Sale, Case No. 04S172,** *attached*

*to* **Defendant's Response.** The Wahlers were notified to vacate the property and a writ of possession was issued placing the Bank of New York in possession of the property on January 25, 2006. **Exhibit K, Notice to Vacate; Writ of Possession, Case No. 04SP172,** *attached to* **Defendant's Response.** The Wahlers were locked out of the property on February 3, 2006, by the Buncombe County Sheriff's Department. *Id.*

On February 6, 2006, after the Wahlers had been locked out of and evicted from the property, Gary Triggs, as counsel for the Wahlers, filed in the state court foreclosure action a motion for a temporary restraining order. **Exhibit L, Motion for TRO or Other Relief, Case No. 04SP172,** *attached to* **Defendant's Response.** The state court judge issued her decision on March 3, 2006, finding that the foreclosure sale was final; the Wahlers failed to take any action to preclude that finality until after the sale became final; and thus, the Wahlers were not entitled to any relief. **Exhibit M, Order Denying Motion for Temporary Restraining Order, Case No. 04SP172,** *attached to* **Defendant's Response.** The state court made the following specific findings:

> Upon application of the Bank of New York, the Buncombe County clerk of superior court issued a Writ of Possession putting Bank of New York in possession of the Property on

January 25, 2006. The Buncombe County Sheriff's Department served the Writ of Possession on the Wahlers and the Wahlers remained on the Property until they were locked out of the Property on February 3, 2006. The Wahlers' counsel, on February 6, 2006, served the Motion for TRO on counsel for CHL [Countywide Home Loans]. The Motion for TRO was scheduled for hearing and was heard in this Court on February 20, 2006, but a copy of the Motion for TRO did not appear in the Court's file as of the commencement of the hearing. The Wahlers' counsel, on February 9, 2006, filed, in the Civil Action pending in the United States District Court, a motion for a temporary restraining order that is virtually identical to the pending Motion for TRO.

. . .

The rights of the Wahlers, CHL and the Bank of New York with respect to the Deed of Trust and the Property became fixed pursuant to N.C. Gen. Stat. § 45-21.29A no later than ten (10) days after the filing of the notice of the foreclosure sale, *i.e.*, by Monday, November 28, 2005. The Wahlers, before the rights of the parties became fixed under N.C. Gen. Stat. § 45-21.29A, never calendared and sought a hearing of their August 18, 2004 appeal of the Foreclosure Order, never posted a bond to enjoin the foreclosure sale pursuant to N.C. Gen. Stat. § 45-21.16(d)1), and never sought an injunction of the sale pursuant to N.C. Gen. Stat. § 45-21.34. *The Motion for TRO must therefore be denied as moot.*

*Even if the Court were in its discretion to deem the Motion for TRO to have been made in the Civil Action [of Wahler v. Countrywide Homes Loans, Inc., Case No. 05CVS4772], the removal of the Civil Action to the U.S. District Court for the Western District of North Carolina deprives this Court of subject matter jurisdiction over the Civil Action and thus over any motion therein to enjoin the foreclosure of CHL's interest in the property pursuant to Chapter 45 of the North Carolina General Statutes, pursuant to 28 U.S.C. §1446(d).*

**Exhibit M, at 3-4 (emphasis added).**

As noted by the state court, on November 25, 2005, Countrywide had removed the Wahlers' state court action *Wahler v. Countrywide Homes Loans, Inc., Case No. 05CVS4772*, to this Court and is filed under Civil Case No. 1:05cv349. On February 9, 2006, after the foreclosure sale was final and the Wahlers were out of the property, Gary Triggs, acting as their attorney, moved for a temporary restraining order in this Court. The language of that motion is virtually identical to the language of the motion filed in the state court foreclosure proceeding, a fact also noted by the state court judge ruling on Triggs' motion in that case. In the motion filed in this Court, Triggs sought as relief "a preliminary injunction to bar Defendants' threatened foreclosure sale of his home and eviction." **Plaintiffs' Memorandum in Support of Entry of TRO or other relief, filed February 9, 2006, at 6.** As a claim of irreparable harm, Triggs alleged that "without the injunction, the Plaintiff will lose the use, possession and enjoyment of what has been their home and further may lose the only realistic chance they have of saving their home." *Id.*, at 7. Counsel also stated that "if the injunction is not issued, Plaintiff may lose the home and be on the street." *Id.* It is undisputed that at the time Triggs filed the motion and memorandum, the foreclosure was final, the Wahlers

had been evicted from the home, and there was no remedy left in the foreclosure proceeding due to the Wahlers' failure to perfect their appeal.

On April 7, 2006, the undersigned entered an Order denying the motion for a temporary restraining order noting that the motion "was moot at the time it was filed since the foreclosure sale had become final and the Wahlers were no longer present on the property." **Memorandum and Order to Show Cause, filed April 7, 2006, at 4.** In that same Order, the undersigned placed Triggs on notice

> that pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927 and this Court's inherent powers, the Court contemplates the imposition of sanctions for his conduct in filing this motion for a temporary restraining order. That conduct includes the filing of a motion while a virtually identical motion was pending in state court, failing to advise the Court that such motion was pending, and requesting such relief in the face of overwhelming case law instructing lower federal courts not to interfere with state court foreclosure proceedings.

*Id.*, at 5-6.

## II. THE HEARING

At the hearing conducted on April 27, 2006, the Court asked Triggs whether it was true that he knew the state foreclosure was final at the time he moved this Court to issue a temporary restraining order. Triggs'

response was that his clients were fighting the foreclosure and he brought this motion because they had been locked out of their home and the state court had already denied the motion for a temporary restraining order in the foreclosure action. Triggs ultimately admitted that he knew the foreclosure action had come to a final conclusion. When it was pointed out that the state court judge in the foreclosure action did not make her ruling until March 3, 2006, Triggs admitted that he filed the motion in this Court before the state court had made her ruling, thus contradicting his earlier representation to the Court.

Despite the fact that Triggs acknowledged that the Wahlers had already been evicted from their home at the time he filed this motion to restrain that very action, he argued to the Court that the only remedy he had was to move for a temporary restraining order because if the Wahlers lost their home, they would be damaged. Triggs stated that he wanted to keep them in their home while the lawsuit was pending. This statement ignored the fact that the Wahlers had been evicted before he filed the motion in this Court. Triggs also argued that the ultimate relief sought by the Wahlers in the Truth in Lending case was to prevent the foreclosure of their home. However, he acknowledged that foreclosure had already

become final when he filed this motion. He also argued that, despite the fact that it was too late for the Wahlers to post a bond to stop the foreclosure, this Court should have allowed them to do that act.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 11 provides in pertinent part:

By presenting to the court . . . a pleading, . . . an attorney . . . is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances-

    (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

    (2) the claims . . . are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law . . .;

    (3) the allegations and other factual contentions have evidentiary support or, . . . are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

**Fed. R. Civ. P. 11(b).**

Title 28 U.S.C. § 1927 provides in pertinent part:

Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**28 U.S.C. § 1927.**

"A federal court also possesses the inherent power to regulate [attorneys'] behavior and to sanction [attorneys] for bad-faith conduct." ***In re Weiss*, 111 F.3d 1159, 1171 (4th Cir. 1997).** Moreover, "[a] court may invoke its inherent power in conjunction with, or instead of, other sanctioning provisions such as Rule [11]." ***Id.***

> "A finding of bad faith is warranted where an attorney . . .knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.". . . [A] finding of bad faith is "the key to unlocking the inherent power[.]"

***Byrne v. Nezhat*, 261 F.3d 1075, 1121 (11th Cir. 2001) (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)) (other citations omitted).**

## IV.  DISCUSSION

The Court first considers the imposition of sanctions pursuant to Rule 11.  At the time that Triggs filed the motion in this Court for a temporary restraining order to stop the foreclosure action in state court, he knew (1) that the foreclosure action had already been completed and was final with no right of appeal; (2) a writ of possession had issued; (3) a notice of

eviction had issued; (4) the Wahlers had been locked out of the house; and (5) title and possession to the property had already passed. In spite of this knowledge, however, Triggs filed the same motion in this Court which he had pending in state court. And, he filed the motion in this Court seeking relief which could not be granted because the very thing he sought to stop had already occurred. Moreover, he did not tell this Court that his clients had already been evicted from the house or that the same motion was pending in the state court.

Triggs' conduct in filing the motion and in the continued pursuit thereof is viewed under an objective standard of reasonableness. *In re Kunstler*, **914 F.2d 505, 518 (4th Cir. 1990).** In considering the nature of sanctions to be imposed, the Court looks first to the language of the Rule.

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

**Fed. R. Civ. P. 11(c)(2).**

"Filing a [motion] in federal court is no trifling undertaking." ***Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).** "One of the fundamental purposes of Rule 11 is to reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, . . . [thereby] avoid[ing] delay and unnecessary expense in litigation." *Id.* **(quotations omitted).** "In this case, there is no question that [Triggs] filed the instant [motion] with the specific intent of circumventing [the state] court's [foreclosure action]." ***John Akridge Co. v. Travelers Cos.*, 944 F. Supp. 33, 34 (D.D.C. 1996), aff'd, 1997 WL 411654 (D.C. Cir. 1997); *Truesdell v. Southern California Permanente Med. Group*, 293 F.3d 1146, 1154 (9th Cir. 2002) ("It was, at best, disingenuous to claim that statistical records in support of Plaintiff's theory must exist, when all along counsel had personal knowledge of another case that disproved his statistical argument.").** Indeed, the procedural history of the case and the related state court cases discloses a motive to harass. **See, *e.g.*, *Markwell v. County of Bexar*, 878 F.2d 899, 903 (5th Cir. 1989).** Moreover, while this Court cannot and does not sanction Triggs for his conduct in the state court, his behavior before that tribunal indicates a clear intent to continue to harass the Defendant through the filing and continuation of the motion

for a temporary restraining order in this Court. *Id.* **("[G]iven the**

**background of this long-running dispute, the judge was justified in**

**considering the filing of the Motion to Strike a Motion for Extension of**

**Time as harassing and unprofessional conduct in this court.");** *In re*

*Weiss*, *supra.* Indeed, the allegations of the motion prove this action is

nothing more than a substitute for the foreclosure action.

> Having distilled [the motion for a temporary restraining order] to
> its essentials, [the Court] finds that it remains what it was when
> [Plaintiffs] first brought suit in the [state court]: a garden variety
> [foreclosure action]. By expanding [this] case to include the
> [Truth in Lending Act] charge and [then moving for a temporary
> restraining order], [Triggs] subjected himself to sanctions.[2] . . .
> [Triggs'] professional responsibilities in this case required him
> to perform a reasonably thorough and *objective* investigation of
> the facts before asserting them as the bases for [this motion].
> . . . What is more, [Triggs] failed to research the law. Had he
> done so, he would have learned that [this motion for a
> temporary restraining order was not only moot but] doomed to
> failure.

**Byrne, at 1115 (emphasis and footnote added).**

It is axiomatic that a district court must make credibility

determinations when ruling on the evidence submitted in support of and in

---

[2]As previously noted, this Court does not sanction Triggs for the filing
of the state court action. However, once here, he should not have pursued
a case which was nothing more than an attempt to stop a foreclosure
which had already occurred, a fact admitted by Triggs at the hearing, by
the pursuit of a motion for relief which could not be granted.

opposition to Rule 11 sanctions. ***Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990).** In deciding whether an attorney has violated Rule 11, "a court must make some assessment of the signer's credibility." ***Id.*** Indeed, rulings on such motions "are fact-specific and almost invariably require assessments of credibility." ***In re Downs*, 103 F.3d 472, 481 (6th Cir. 1996); *accord, In re Cascade Energy & Metals Corp.*, 87 F.3d 1146, 1149 (10th Cir. 1996); *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259 (2d Cir. 1994); *In re Kunstler*, *supra.*** The record shows that the credibility determination in this case goes squarely against Triggs. First of all, Triggs admitted that his clients had failed to perfect the appeal of the foreclosure, the only hope they actually had of stopping it. Secondly, his oral argument at the hearing was inconsistent and appeared to be contrived to confuse the Court as to the facts. ***Byrne, supra*; *In re Kunstler*, *supra* ("Rule 11 sanctions are appropriate when a lawyer attempts to use discovery to support outrageous and frivolous claims for which there is *no* factual support.").** This was particularly telling in Triggs' argument that at the time he filed the motion in this Court, he did so because the state court had already denied his motion for a temporary restraining order. That was

patently incorrect since the state court ruled on the motion on March 3, 2006, whereas Triggs filed this motion on February 6, 2006.  When confronted with this information, Triggs merely shifted gear into another argument.  Nor was he ever able to explain why he thought he could obtain an order in this Court preventing a foreclosure which had already occurred. Triggs' conduct amounted to a blunderbuss of filings; conduct perhaps designed by his difficult client but without any legal support.[3]

**In re Kunstler, 914 F.2d at 519 ("Repeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law, under which baseless claims have been made, are all appropriate indicators of an improper purpose.").**

During the hearing, Triggs essentially argued that his conduct in this Court was merely an attempt to save the Wahlers' home from foreclosure and prevent them from being "put out on the street."  The problem is, however, that by the time he filed the motion, the Wahlers were already evicted from the house.  His argument amounts to a claim that he may not be sanctioned simply because the undersigned disagrees with his legal

---

[3]Again, it is only the filing of the motion here and pursuit thereof which is being sanctioned.  However, Triggs' conduct in state court is indicative of the motivation behind his actions here.

analysis.  "Simply saying [an issue is complex] does not make it so."

***Christian*, 286 F.3d at 1129.**  There is nothing complex about this case

except the "multitudinous efforts [of Triggs] to circumvent the [state court

foreclosure] and to expand the scope of an already frivolous suit.  At some

point, enough is enough."  ***Id.*;  Buster v. Greisen, 104 F.3d 1186, 1190

n.4 (9th Cir. 1990) ("Although prior to the [1993] amendments conduct

was measured only at signing, Rule 11 now authorizes sanctions for

presenting to the court (whether by signing, filing, submitting, or *later

advocating*) a document otherwise sanctionable." (quotations and

other citations omitted); *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d

1418, 1422 (11th Cir. 1996) ("That the contentions contained in the

complaint were not frivolous at the time it was filed does not prevent

the district court from sanctioning Penick for his continued advocacy

of them after it should have been clear that those contentions were

no longer tenable.").**  Indeed, after being educated by the Order to Show

Cause as to the fallacy of his position, Triggs continued to press the point

during the hearing.  ***Binghamton Masonic Temple, Inc. v. Bares*, 168

F.R.D. 121, 128 (N.D.N.Y. 1996) ("Yet, the Plaintiffs, with notice from**

**the Court that their claim was unsubstantiated by fact or law,**

**continued to pursue their claims.").**

> A legal contention is not warranted by existing law if it is based on legal theories that are plainly foreclosed by well-established legal principles and authoritative precedent, unless the advocate plainly states that he or she is arguing for a reversal or change of law and presents a nonfrivolous argument in support of that position. A legal contention that is made in spite of the obvious preclusive effect of a judgment in prior litigation is not warranted by existing law.

**2 *Moore's Federal Practice*, § 11.11[7][a] (Matthew Bender 3d ed.).**

The Court, therefore, finds that sanctions pursuant to Rule 11 are

warranted.

Next, the Court considers whether sanctions pursuant to 28 U.S.C. §

1927 should be imposed.

> The unambiguous text of § 1927 aims only at attorneys who *multiply* proceedings. It "does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law." Rather, this provision "is concerned only with limiting the abuse of court processes.". . . Section 1927 focuses on the conduct of the litigation and not on its merits.

***DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (quoting *Roadway***

***Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980)).** Additionally, § 1927

requires a finding of bad faith or reckless conduct as a precondition to the

imposition of sanctions. ***Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 n.14 (4th Cir. 1999).**

There is every indication from the record and Triggs' conduct during the hearing that in the filing and pursuit of this motion, he acted with intentional or reckless disregard of his duties to the Court. ***Higginbotham v. KCS Intern., Inc.*, 202 F.R.D. 444 (D. Md. 2001).** "The fact that so many allegations in the [motion] lacked a basis in law or in fact strongly supports the court's finding of improper purpose," such as harassment. ***In re Kunstler*, 914 F.2d at 519.** "Moreover, [such allegations] typified the harassing, bad faith nature in which [Triggs] prosecuted this [motion]." ***Byrne*, 261 F.3d at 1112; *In re Kunstler*, *supra* ("Repeated filings, [and] the outrageous nature of the claims made, . . . are all appropriate indicators of an improper purpose.").** And, his conduct has expended court resources which should have been used on meritorious cases. The Court, therefore, finds that Triggs acted recklessly and with improper purpose in the filing and pursuit of this motion. Because the Court finds that Triggs acted recklessly and with improper purpose, the imposition of sanctions is also warranted pursuant to the inherent powers of the Court. ***Byrne, supra.***

Therefore, the next issue is the appropriate form and amount of sanctions. The "primary, or 'first' purpose of Rule 11 is to deter future litigation abuse." *In re Kunstler*, **914 F.2d at 522.** When a monetary award is considered, the court should consider "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." *Id.*, **at 523.** And, as the Rule states, a sanction of attorneys' fees must be limited to those incurred in this action.

The Court will apply the same standards to the assessment of attorneys' fees pursuant to its inherent powers. As to the assessment pursuant to § 1927, fees will be limited to the conduct found to be multiplicitous.

The attorneys for Countrywide have submitted an affidavit in support of their request for an award of counsel fees made during the hearing. The defense attorneys request a total of $18,103.94 for services rendered in connection with the motion for a temporary restraining order. The undersigned has reviewed the affidavit and the time sheets attached thereto. The Court is familiar with the experience and reputation of the attorneys who represented the Defendant, all of whom have appeared

before the undersigned. Each is considered to be an excellent and valued member of the Bar. Their respective hourly rates are reasonable and customary. However, the Court finds the total time spent to be duplicative and unnecessary. ***In re Kunstler*, 914 F.2d at 523 ("The injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims.").** The affidavit does not limit the time sought to the motion for a temporary restraining order so the Court has culled from the services rendered only those related to the motion. The Court finds that an award of attorneys' fees in the amount of $3,500.00 is reasonable and an award of costs in the amount of $355.65 is warranted. These awards are based on Rule 11, § 1927 and the Court's inherent authority.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that Gary Triggs, Esq., is hereby **SANCTIONED** in accordance with the terms and provisions of this Order.

**IT IS FURTHER ORDERED** that as a sanction, he shall pay to the law firm of McGuire, Wood & Bissette. P.A., the sum of $3,500.00 as attorneys' fees and the sum of $355.65 as costs.

Signed: June 14, 2006

Lacy H. Thornburg
United States District Judge